UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ADAM CLAYTON GIFFORD, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:23-cv-347 |
| ) | |
| v. ) | Judge Atchley |
| ) | |
| WELDY PHILLIP, ) | Magistrate Judge Poplin |
| DEREK DAUGHERTY, ) | |
| BEARD, and MORGAN COUNTY ) | |
| CORRECTIONAL COMPLEX, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff, an inmate in the custody of the Tennessee Department of Correction ("TDOC") currently housed in the Morgan County Correctional Complex ("MCCX"), filed a pro se civil rights action under 42 U.S.C. § 1983 [Doc. 1] and motion for leave to proceed *in forma pauperis* [Doc. 2]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion to proceed as a pauper, permit his claim for excessive force to **PROCEED** against Defendants Beard and Daughtery individually, and **DISMISS** all remaining claims and Defendants.

### I. MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion to proceed *in forma pauperis* [Doc. 2] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred

fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. And formulaic and conclusory recitations of the elements of a

2

claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. But courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Plaintiff's Allegations

At approximately 9:10 a.m. on August 16, 2023, Plaintiff was placed in handcuffs for creating a disturbance and was walked to the back of Unit 1 to await transport to the "hole" [Doc. 1 p. 4]. Cpl. Weldy Phillip told Plaintiff to "shut [his] mouth" and "sit down[,]" and Plaintiff responded that he had freedom of speech [*Id.*]. Cpl. Phillip pushed Plaintiff into a seat at the table "with his hands around [Plaintiff's] throat" [*Id.*]. Plaintiff yelled, "[L]et go of my throat[.] I can't breath[e]" [*Id.*]. But Plaintiff's "leg slip[p]ed" and almost tripped Cpl. Phillip, so Cpl. Phillip hit the panic button [*Id.*]. The Green Team responded, and Cpl. Daughtery and Correctional Officer ("CO") Beard grabbed Plaintiff's arms and rammed his head into the wall while punching him in the face [*Id.*]. Cpl. Daughtery and CO Beard walked Plaintiff outside in a bent over position with his "arms almost breaking" [*Id.* at 4-5]. When they reached the gate, CO Beard pulled the gate into the side of Plaintiff's face and right ear, then the officers threw Plaintiff, who was struggling to breathe, in the back of the transport van [*Id.* at 5].

Plaintiff was transported to a high security area [*Id.*]. When officers opened the door to the van, Plaintiff fell out [*Id.*]. Plaintiff was led to a room with no cameras and strip searched [*Id.*]. Cpl. Daughtery "nod[d]ed" at CO Beard, who went into a "fighting stance" and began punching Plaintiff in the ribs and stomach [*Id.*]. Plaintiff "balled up on [the] floor while" Cpl. Daughtery and CO Beard laughed [*Id.*]. A nurse came into the room about five or six minutes later and asked if Plaintiff was okay [*Id.*]. But Cpl. Daughtery was behind the nurse shaking his head, "No[,]" so Plaintiff stated that he was fine [*Id.*]. Plaintiff was then transported to the "hole" [*Id.*].

3

It was almost lunchtime when Plaintiff reached the "hole," and he could not move, his right eye was swollen shut, he had a knot on his head, his ribs were bruised, and he had a cut on his ear [*Id*. at 5, 6].  Plaintiff requested medical treatment, and an unidentified corporal told him "tuff [sic] luck" [*Id*. at 5].  Then Plaintiff was refused lunch [*Id*.].  Plaintiff put in multiple sick calls about the pain and received Tylenol [*Id*. at 5, 6].  He was then placed in maximum security custody, where he will not be considered for parole [*Id*. at 5].

Aggrieved by these events, Plaintiff filed the instant action alleging that Defendants used excessive force against him and wrongfully placed him in maximum security [*Id*. at 3].  Plaintiff seeks monetary compensation and a court order forcing MCCX to review the camera footage to reconsider Plaintiff's security placement [*Id*. at 6].

### C. Analysis

Plaintiff has sued MCCX as an entity and Defendants Phillip, Daughtery, and Beard in both their individual and official capacities [*Id*. at 2-3].  To state a claim against any Defendant for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.

#### 1. Official-Capacity Liability

Defendants are all employees of MCCX, which is a state prison under the control of the TDOC.  *See* Tennessee Dep't of Corr., *State Prison List,* https://www.tn.gov/correction/state-prisons/state-prison-list.html (last visited Sept. 27, 2023).  By suing MCCX or a TDOC employee in his official capacity, Plaintiff is essentially suing the TDOC itself.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action

4

against an entity of which an officer is an agent."). And because the TDOC is an arm of the State of Tennessee, suit against a TDOC employee in his official capacity is suit against the State. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State").

However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within meaning of § 1983). Additionally, the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). This immunity extends to claims for injunctive and equitable relief. *See Lawson v. Shelby Cnty.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory[,] or monetary relief."). The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Accordingly, Plaintiff cannot maintain suit against MCCX or Defendants in their official capacities. MCCX and all official-capacity claims will be **DISMISSED**.

    2. **Individual-Capacity Liability**

        a. **Security Classification**

            *i.* **Due Process**

Plaintiff complains that he was classified to maximum security and, as a result, lost an opportunity to be considered for parole. But in order to state a cognizable due process claim regarding his confinement in maximum security, Plaintiff must demonstrate that he possesses a liberty interest in freedom from that classification that is protected by the Due Process Clause. *See*

5

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). To establish such an interest, Plaintiff must show that being placed in maximum security imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Whether an inmate's confinement in a maximum-security environment implicates a liberty interest is fact dependent. *Compare Sandin*, 515 U.S. at 486 (holding assignment to disciplinary segregation for 30 days did not implicate liberty interest) *with Austin*, 545 U.S. at 223-24 (finding placement in maximum security did implicate liberty interest where, in addition to restrictions common to most solitary confinement facilities, conversation was not permitted between cells, lights were left on 24 hours per day, classification review only occurred annually, and placement in maximum security disqualified inmate from parole consideration). The events Plaintiff complains of in this lawsuit occurred on August 16, 2023, and he filed suit on September 26, 2023 [*See, generally,* Doc. 1]. Therefore, Plaintiff has not experienced a prolonged period of deprivation sufficient to establish a cognizable due process claim. *See, e.g., Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (holding sixty-nine days in administrative segregation did not constitute due process violation); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (holding sixty-one days in segregation is not atypical and significant). And he has not presented the Court with any non-conclusory allegation to support a determination that his circumstances are significantly different than those imposed by administrative segregation, which "have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in

6

administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").

### *ii.* Conditions of Confinement

Further, Plaintiff cannot state an Eighth Amendment claim based on his maximum-security status unless he alleges that this classification deprived him of some basic human need. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (finding confinement in administrative segregation "three years and running" failed to state Eighth Amendment claim). Plaintiff has not alleged that he has been deprived of any basic human rights or privileges while in restrictive custody, and therefore, Plaintiff's allegations have failed to state a plausible Eighth Amendment claim.

The fact that Plaintiff cannot be considered for parole because of his maximum-security status does not change the Court's resolution, as it is well established that there is no constitutional right to parole. *See Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Rather, a protected liberty interest in parole exists only when State law creates "a legitimate claim of entitlement to it[.]" *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991) (quoting *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 422 U.S. 1, 7 (1979)). And Tennessee inmates do not have an entitlement to parole; they have, at most, "a mere hope that the benefit will be obtained." *Wright v. Trammell*, 810 F.2d 589, 590-91 (6th Cir. 1987) (citation omitted); *see also* Tenn. Code Ann. §§ 40-28-117(a) (defining parole as "a privilege and not a right" and holding that if parole board determines that parole is appropriate "the prisoner may be paroled"). Because Tennessee law provides the parole board with discretion in determining parole eligibility, Plaintiff has no protected liberty interest in

7

parole and no basis for a challenge to the calculation of his parole eligibility. Therefore, any claim related to Plaintiff's security classification or his eligibility for parole will be **DISMISSED**.

### b. Excessive Force

Plaintiff additionally claims that Defendants Phillip, Beard, and Daughtery used excessive force against him [Doc. 1 p. 3]. In considering whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e., the subjective component; and (2) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

Here, Plaintiff alleges that Defendants Daughtery and Beard kicked and punched him while he was restrained, and that Defendant Beard also hit Plaintiff in the side of the face with the prison gate [Doc. 1 p. 4-5]. The Court finds these allegations sufficient to state a plausible excessive force claim against Defendants Daughtery and Beard, and this claim will **PROCEED** against them. *See*, *e.g.*, *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("[S]triking a neutralized suspect who is secured by handcuffs is objectively unreasonable.").

The Court does not find Plaintiff has plausibly alleged excessive force by Defendant Phillip, however, as he has alleged only that Defendant Phillip (1) told him to "shut [his] mouth and sit down"; (2) pushed Plaintiff into a seat "with his hands around [Plaintiff's] throat" when Plaintiff did not follow his command; and (3) hit the panic button that summoned the Green Team [Doc. 1 p. 4]. Accepting Plaintiff's allegations as true, Defendant Phillip placed his hands on Plaintiff only after Plaintiff did not comply with his instruction to be quiet and sit down. That is, Plaintiff's allegations suggest that the force was used to maintain and restore discipline rather than

8

for the very purpose of causing harm. And significantly, Plaintiff does not allege any injury from Defendant Phillip's use of force. Therefore, the Court otherwise finds Defendant Phillip's conduct was the type of *de minimis* use of force that does not implicate constitutional protections. *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (noting *de minimis* use of physical force that is not "repugnant to the conscience of mankind" does not implicate the Eighth Amendment, and that "a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim) (quoting *Hudson*, 503 U.S. at 8-9) (internal quotation marks omitted). Accordingly, Plaintiff's excessive force claim against Defendant Phillip will be **DISMISSED**.

### III.  CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4. Plaintiff has set forth a plausible claim of excessive force against Defendants Beard and Daughtery in their individual capacities;

5. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Beard and Daughtery;

6. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

7. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

9. Defendants shall answer or otherwise respond to the Complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the Complaint, it may result in entry of judgment by default against that Defendant;

10. All other claims and Defendants are hereby **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

/s/*Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**